USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: December 16, 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
SAME DAY DELIVERY SERVICE, INC.,

                Plaintiff,

      -v-                                  15-cv-2774 (KBF)

PENN STAR INSURANCE COMPANY,        OPINION & ORDER

                Defendant.
------------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

      Plaintiff Same Day Delivery Service, Inc. ("Same Day") brought this action seeking a declaration that its insurer Penn-Star Insurance Company ("Penn-Star") must—pursuant to Same Day's general liability insurance policy—insure, defend and indemnify Same Day in a personal injury lawsuit filed in the United States District Court for the District of New Jersey. Pending before the Court is Penn-Star's motion for summary judgment on the grounds that Same Day failed to give timely notice of its insurance claim and because the underlying suit arose out of an event excluded from the policy's coverage. For the reasons set forth below, the Court concludes that Penn-Star is entitled to summary judgment on the basis of late notice. Accordingly, Penn Star's motion is GRANTED and the action is DISMISSED WITH PREJUDICE.

I.      BACKGROUND

      Penn-Star issued Same Day a commercial lines general liability policy (the "Policy"), bearing policy number PAC6692401, for the period of May 12, 2007 to May

12, 2008.  (Penn-Star's 56.1 ¶ 1;[1] see Decl. of Lance J. Kalik, Ex. A ("Penn-Star Policy"), ECF No. 20.)  The Policy contains a coverage exclusion provision, as follows:

> This insurance does not apply to:
> **g. Aircraft, Auto or Watercraft**
> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading."

(Penn-Star Policy at Penn-Star00028.)  The Policy defines "loading or unloading" as the "handling of property: (a) After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or 'auto'; (b) While it is in or on an aircraft, watercraft or 'auto'; or "While it is being moved from an aircraft, watercraft or 'auto' to the place where it is finally delivered."  (Penn-Star Policy at Penn-Star00037.)

The Policy also contains a provision imposing certain conditions on coverage, including a duty on the insured to provide timely notice to Penn-Star.  This provision reads as follows:

---

[1] The notation "Penn-Star's 56.1" refers to Penn-Star's statement of undisputed material facts, submitted under Local Rule 56.1.  (ECF No. 17.)  This decision relies only on those facts Same Day did not dispute with citations to admissible evidence in its response.  (Same Day's 56.1 Response, ECF No. 27.)  See Local Rule 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").  The Court notes that Same Day appears to have overlooked Penn-Star's submission of a separate 56.1 statement, instead directing its response to the "Statement of Relevant Facts and Procedural History" section of Penn-Star's opening brief.  Because those facts are the same as those in Penn-Star's 56.1 statement, the Court treats Same Day's response as if it were properly directed to Penn-Star's 56.1 statement.

   The notation "Same Day's 56.1 Counterstatement" refers to Same Day's counterstatement of material facts, submitted under Local Rule 56.1.  (ECF No. 26.)  Penn-Star did not submit a 56.1 response.  This decision therefore relies on those facts supported by admissible evidence.

> **2. Duties In The Event of Occurrence, Offense, Claim or Suit**
> a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
> (1) How, when and where the "occurrence" or offense took place;
> (2) The names and addresses of any injured persons and witnesses; and
> (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.
> b. If a claim is made or "suit" is brought against any insured, you must:
> (1) Immediately record the specifics of the claim or "suit" and the date received; and
> (2) Notify us as soon as practicable.
> You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

(Penn-Star Policy at Penn-Star00034.) The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Penn-Star Policy at Penn-Star00038.)

On December 23, 2007, Andrew Lee arrived at a ShopRite supermarket in Morris Plains, New Jersey, which is owned and operated by Village Supermarkets, Inc. ("Village"), in order to pick up groceries and other goods from ShopRite, load the items into his vehicle, and deliver the items to ShopRite's customers as part of the services that Same Day provided to ShopRite. (Penn-Star's 56.1 ¶ 2.) The parties dispute whether Lee was an employee of Same Day or its independent contractor. (Penn-Star's 56.1 ¶ 2; Same Day's 56.1 Counterstatement ¶¶ 2-3.) While Lee was moving a metal cart loaded with containers of groceries with the intent to load the containers into his vehicle, the metal cart came into contact with the leg of Debra Sansone, a ShopRite employee. (Decl. of Andrew Lee ("Lee Decl.") ¶¶ 3-5, ECF No. 21.) (Resolution of the issue of whether Lee was "loading" the containers into his vehicle at the time of the accident is not necessary to resolve

3

Penn-Star's motion on the basis set forth herein.) After this incident, Lee finished loading the items and made his scheduled deliveries. (Lee Decl. ¶ 6.)

The parties disagree as to when Same Day first received notice of Ms. Sansone's incident. Penn-Star asserts that later that day, Lee received a telephone call from Scott Weinstein, Same Day's vice president, requesting details about the accident (Penn-Star's 56.1 ¶ 5); Penn-Star also contends that Lee discussed the accident with Ron Lowe, his immediate supervisor at Same Day, within one month of the accident and that Lowe participated in drafting an accident report prepared by Village on December 24, 2007 (Penn-Star's 56.1 ¶ 6). Same Day disputes these facts, contending that Weinstein has no recollection of speaking with Lee concerning the incident and dismissing as speculative Penn-Star's assertion that Lowe participated in drafting the accident report. (Same Day's 56.1 Response ¶¶ 3-4; Decl. of Scott Weinstein ¶¶ 9-10, 13, ECF No. 28.) (Resolution of this issue is not necessary for determination of Penn-Star's motion on the basis set forth herein.)

The parties do not, however, dispute the relevant events that followed. Village's workers' compensation insurer, Liberty Mutual Insurance Company ("Liberty Mutual"), paid for Ms. Sansone's medical treatment. (Penn-Star's 56.1 ¶ 7.) On or about April 18, 2008, Liberty Mutual called Same Day regarding the accident and later that day sent a letter (the "April 18 Letter") to Scott Weinstein in which Liberty Mutual informed Same Day of the potential claim against Same Day for the money that Liberty Mutual had paid in workers' compensation benefits. (Penn-Star's 56.1 ¶ 8; <u>see</u> Decl. of Lance J. Kalik, Ex. F, ECF No, 20-9.) The letter

4

requested that Same Day "notify [its] insurance carrier of this potential claim." (Penn-Star's 56.1 ¶ 8.) On December 23, 2008, Liberty Mutual sent another letter (the "December 23 Letter") to Same Day stating that its investigation had found Same Day to be "legally liable for [Ms. Sansone's] accident" and claiming a lien in the amount of $178,749.80; the December 23 Letter also stated, "We have previously notified you of our lien interest." (Penn-Star's 56.1 ¶ 9; see Decl. of Lance J. Kalik, Ex. H, ECF No, 20-11.)

By letter dated February 2, 2009, Same Day notified its excess insurer, Scottsdale Insurance Company, of Ms. Sansone's accident, enclosing the December 23 Letter from Liberty Mutual. (Penn-Star's 56.1 ¶ 11; see Decl. of Lance J. Kalik, Ex. J, ECF No, 20-13.) On or about February 26, 2009, Same Day notified its insurance agent, the James B. Oswald Company ("Oswald"), of the accident, which in turn notified Penn-Star. (Penn-Star's 56.1 ¶ 12; see Decl. of Lance J. Kalik, Ex. K, ECF No, 20-14.) By letter dated March 9, 2009, Penn-Star denied coverage to Same Day for Ms. Sansone's accident based on the Policy's auto exclusion and for failure to provide timely notice of the potential claim. (Penn-Star's 56.1 ¶ 13.) By email dated March 18, 2009, Oswald strongly suggested that Same Day submit the claim to its commercial auto policy insurer, Allstate Insurance Company, in light of Penn-Star's denial of coverage. (Penn-Star's 56.1 ¶¶ 13-14.)

On or about December 17, 2009, Ms. Sansone and her husband, Robert Sansone, filed an action in the United States District Court for the District of New Jersey against Same Day and Lee, alleging that Lee was "making a delivery to [the

5

ShopRite], when as a result of his carelessness and negligence, he struck [Ms. Sansone] with a metal cart causing her severe personal injuries to her ankle, foot and leg." (Penn-Star's 56.1 ¶ 10.)  By letter dated February 16, 2010, Ms. Sansone provided Same Day with a copy of the summons and complaint, and Same Day notified Oswald of the filing of the underlying action on March 8, 2010.  (Penn-Star's 56.1 ¶ 15.)

By separate letters dated March 10, 2010 to Same Day and Lee, Penn-Star denied coverage for the Sansones' action based on the same grounds previously asserted—the Policy's auto exclusion and failure to provide timely notice.  (Penn-Star's 56.1 ¶ 16.)  After Same Day requested that Penn-Star re-evaluate its decision, Penn-Star again denied coverage on April 15, 2011.  (Penn-Star's 56.1 ¶ 16.)

On February 27, 2015, Same Day filed this declaratory judgment action against Penn-Star in the New York Supreme Court, New York County, alleging that Penn-Star is obligated to provide coverage to Same Day for the Sansones' personal injury lawsuit.  (See ECF No. 1.)  On April 9, 2015, Penn-Star removed the action to this Court on the basis of diversity jurisdiction.  (ECF No. 1.)  Penn-Star moved for summary judgment on Same Day's complaint on October 27, 2015.  (ECF No. 18.)  The motion became fully briefed on December 9, 2015.  (ECF No. 32.)

II.   LEGAL STANDARDS

    A.   Summary Judgment Standard

Summary judgment may not be granted unless a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On summary judgment, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the nonmoving party's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue of material fact for trial.  Price v. Cushman & Wakefield, Inc., 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," because "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted); see also Price, 808 F. Supp. 2d at 685 ("In seeking to show that there is a genuine issue of material fact for trial, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial.").

Only disputes relating to material facts—i.e., "facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see

also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The Court should not accept evidence presented by the nonmoving party that is so "blatantly contradicted by the record . . . that no reasonable jury could believe it." Scott v. Harris, 550 U.S. 372, 380 (2007); see also Zellner v. Summerlin, 494 F.3d 344, 371 (2d Cir. 2007) ("Incontrovertible evidence relied on by the moving party . . . should be credited by the court on [a summary judgment] motion if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party.").

B.   Notice

Under New York law, which governs this diversity action, timely notice is a condition precedent to coverage. Am. Ins. Co. v. Fairchild Indus., Inc., 56 F.3d 435, 438 (2d Cir. 1995); see also White v. City of New York, 81 N.Y.2d 955, 957 (1993) ("The requirement that an insured notify its liability carrier of a potential claim 'as soon as practicable' operates as a condition precedent to coverage."). New York courts have, on numerous occasions, ruled that an insured's inexcusable delay in providing notice of a claim excuses the insurer's obligation to provide coverage. E.g., Briggs Ave. LLC v. Ins. Corp. of Hannover, 11 N.Y.3d 377, 382 (2008).

"Where a policy of liability insurance requires that notice of an occurrence be given 'as soon as practicable,' such notice must be accorded the carrier within a reasonable period of time." Great Canal Realty Corp. v. Seneca Ins. Co., 5 N.Y.3d

742, 743 (2005); see also E. Baby Stores, Inc. v. Cent. Mut. Ins. Co., 337 F. App'x 10, 12 (2d Cir. 2009) (summary order) (same).  New York courts have routinely held that when an insurance policy requires notice to be provided as soon as practicable, delays of as little as one to four months were not within a reasonable period of time as a matter of law.  Am. Home Assur. Co. v. Republic Ins. Co., 984 F.2d 76, 78 (2d Cir. 1993) (36 day delay); Chicago Ins. Co. v. Halcond, 49 F. Supp. 2d 312, 320 (S.D.N.Y. 1999) (38 day delay); Deso v. London & Lancashire Indem. Co. of Am., 3 N.Y.2d 127, 131 (1957) (51 day delay); Avery & Avery, P.C. v. Am. Ins. Co., 51 A.D.3d 695, 697 (2d Dep't 2008) (four month delay); Evangelos Car Wash, Inc. v. Utica First Ins. Co., 45 A.D.3d 727, 727 (2d Dep't 2007) (three and a half month delay); Heydt Contracting Corp. v. Am. Home Assur. Co., 146 A.D.2d 497, 499 (1989) (four month delay); Power Auth. v. Westinghouse Elec. Corp., 117 A.D.2d 336, 342 (1st Dep't 1986) (53 day delay).

  An untimely delay may be found inexcusable as a matter of law "when either no excuse is advanced or a proffered excuse is meritless." Green Door Realty Corp. v. TIG Ins. Co., 329 F.3d 282, 287 (2d Cir. 2003) (quoting Olin Corp. v. Ins. Co. of N. Am., 966 F.2d 718, 724 (2d Cir. 1992)).  The insured bears the burden of showing any delay was excusable under the circumstances.  Id.; Security Mut. Ins. Co. v. Acker-Fitzsimmons Corp., 31 N.Y.2d 436, 441 (1972).

  The test for determining whether a notice provision has been triggered in the first instance is "whether the circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a claim." Sparacino

v. Pawtucket Mut. Ins. Co., 50 F.3d 141, 143 (2d Cir. 1995); see also Rockland Exposition, Inc. v. Great Am. Assur. Co., 746 F. Supp. 2d 528, 540 (S.D.N.Y. 2010) ("[W]here coverage is unclear, reasonable insurance-holders give notice."). A good faith belief in non-liability is generally not a defense to a failure to provide notice of a claim. Fairchild, 56 F.3d at 439; but see Reynolds Metal Co. v. Aetna Cas. & Sur. Co., 259 A.D.2d 195, 201 (3d Dep't 1999). In the context of the question when notice of an occurrence is due, however, a good faith belief in non-liability may excuse some delay. Argentina v. Otsego Mut. Fire Ins. Co., 86 N.Y.2d 748, 750 (1995); Reynolds, 259 A.D.2d at 199-200 ("[A]n insured's good-faith belief in non-liability, when reasonable under the circumstances, may excuse a delay in notifying an insurer of an occurrence or potential claim."). An insured must, however, "exercise reasonable care and diligence to keep [itself] informed of accidents out of which claims for damages may arise." Security Mut. Ins. Co., 31 N.Y.2d at 441. Whether or not a policyholder has a good faith belief in non-liability is normally a question of fact. Reynolds, 259 A.D.2d at 200; see also Argentina, 86 N.Y.2d at 750.

Each insurance policy imposes a separate contractual duty on the insured to provide notice. Sorbara Constr. Corp. v. AIU Ins. Co., 11 N.Y.3d 805, 806 (2008). The fact that an insurer may have actual notice from another source does not relieve the insured of its separate contractual obligation to provide notice. See id.; Ocean Partners, LLC v. North River Ins. Co., 25 A.D.3d 514, 515 (1st Dep't 2006); Travelers Ins. Co. v. Volmar Constr. Co., 300 A.D.2d 40, 44 (1st Dep't 2002). An insurer is not deemed to have received notice by learning of the occurrence giving

rise to a claim from a third party.  Ins. Co. of the State of Pennsylvania v. Argonaut Ins. Co., No. 12 CIV. 6494 DLC, 2013 WL 4005109, at *10 (S.D.N.Y. Aug. 6, 2013); Heydt Contracting, 146 A.D.2d at 499.  Thus, an insurer need not demonstrate prejudice to successfully invoke a defense of late notice.  See AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus., Inc., 84 F.3d 622, 624-25 (2d Cir. 1996); Briggs, 11 N.Y.3d at 382.

An insurer can waive—or be found to have waived—the notice provisions of its policy under certain circumstances.  For instance, waiver of the notice provision can occur if an insurer unequivocally and across the board denies any coverage obligation.  See Jacobson v. Metro. Prop. & Cas. Ins. Co., 672 F.3d 171, 176-78 (2d Cir. 2012); see also H.S. Equities, Inc. v. Hartford Acc. & Indem. Co., 661 F.2d 264, 270 (2d Cir. 1981).  If, however, an insurer has not categorically denied coverage, the insured must comply with notice requirements.  See Olin Corp. v. Ins. Co. of N. Am., 221 F.3d 307, 329 (2d Cir. 2000) (notice requirements were not waived, because the insurer never categorically denied the duty to indemnify).

III. DISCUSSION

Penn-Star moves for summary judgment on two alternative grounds: (1) the Policy's auto exclusion is applicable, and (2) Same Day failed to comply with the Policy's timely notice requirement.  For the reasons set forth below, the Court grants Penn-Star's motion because Same Day's provision of notice of Ms. Sansone's injury was untimely and its delay was inexcusable as a matter of law.[2]

---

[2] Penn-Star also argues that it is entitled to summary judgment based on an "auto exclusion." Same Day principally argues that the auto exclusion does not apply on the basis that Lee was an

Penn-Star's Policy contained a condition that obligated Same Day to give notice "as soon as practicable" following an "'occurrence' or an offense which may result in a claim." (Penn-Star Policy at Penn-Star00034.) The Policy defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Penn-Star Policy at Penn-Star00038.) Under New York law, this meant that Same Day was required to give Penn-Star notice of the occurrence "within a reasonable period of time." Great Canal Realty, 5 N.Y.3d at 743. Ms. Sansone's accident occurred on December 23, 2007. (Penn-Star's 56.1 ¶¶ 2-5.) Same Day does not dispute that it first gave Penn-Star notice of the accident on approximately February 26, 2009, more than 14 months after Ms. Sansone suffered her injury. (Penn-Star's 56.1 ¶ 12.)

As discussed above, the parties dispute when Same Day first became aware of the December 23, 2007 incident such that its duty of notice was triggered. Penn-Star argues that Same Day had adequate awareness of a potential claim as early as

---

independent contractor and therefore the vehicle into which Lee was loading the containers was not owned or operated by, or rented or loaned to, any "insured" under the Policy. (Same Day's Opp. Br. at 4-5, ECF No. 25.) The Court disagrees. The Court concludes that the auto exclusion applies because Same Day's relationship with Lee is sufficient for Lee to qualify as an "insured" under the Policy. (See Penn-Star Policy at Penn-Star00032-33 (stating that an insured includes employees "for acts within the scope of their employment by you or while performing duties related to the conduct of your business").) Penn-Star also has a strong argument that Same Day's evidence supporting its assertion that Lee was an independent contractor and not an employee should be precluded under Fed. R. Civ. P. 37. Same Day did not produce that evidence in discovery, its position conflicts with the evidence it did produce in discovery, and Same Day only first raised this factual issue in the Weinstein declaration filed along with its opposition to Penn-Star's motion for summary judgment. See Hayes v. New York City Dep't of Corrs., 84 F.3d 614, 619 (2d Cir. 1996) ("[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial."); see also Design Strategy, Inc. v. Davis, 469 F.3d 284, 296 (2d Cir. 2006) (discussing factors relevant to whether discovery sanction of preclusion is appropriate). Although the Court need not rely on the auto exclusion to grant Penn-Star's motion for summary judgment, it is a sufficient alternative basis for the Court to do so.

December 23, 2007 (the day of the incident), but in no event later than Same Day's receipt of Liberty Mutual's April 18, 2008 letter regarding the incident.  (Penn-Star's Opening Br. at 13-15, ECF No. 19; Penn-Star's Reply Br. at 3-5, ECF No. 32.)  Same Day counters that its duty to provide notice was not triggered until it received Liberty Mutual's December 23, 2008 letter because it was only then that Same Day became aware of the extent of Ms. Sansone's injuries and the fact that it could have a legal liability as a result.  (Same Day's Opp. Br. at 6-8.)  Same Day does not, however, dispute its receipt of the April 18 Letter.  (Penn-Star's 56.1 ¶ 8.)

      The Court need not resolve the absolute earliest date upon which Same Day's duty of notice was triggered.  Even when viewing the facts in the light most favorable to Same Day, Same Day has failed to raise a genuine issue of material fact that its duty was triggered any later than its receipt of Liberty Mutual's April 18 Letter.  That letter stated that Liberty Mutual's investigation of Ms. Sansone's accident revealed that her "injury may have been caused by [Same Day's] negligence" and that, as a result, Liberty Mutual was placing Same Day "on notice of a potential claim to recover the money [it had paid to Ms. Sansone] in Workers' Compensation Benefits."  (Decl. of Lance J. Kalik, Ex. F.)  The letter then added, "Please notify your insurance carrier of this potential claim."  (Decl. of Lance J. Kalik, Ex. F.)  Same Day contends that the April 18 Letter was insufficient to trigger its notice obligation because Liberty Mutual did not explain how Same Day was negligent and did not indicate what injuries Ms. Sansone had sustained.  But, even if this letter did not make Same Day aware of every relevant detail relating to

13

Ms. Sansone's injury, such awareness is not necessary to trigger a notice obligation under New York law. The insured need only possess sufficient information to suggest to a reasonable person the possibility of a claim. Sparacino, 50 F.3d at 143. The April 18 Letter met that standard.

Having concluded that there is no genuine issue of fact that Same Day's duty to provide notice was triggered on approximately April 18, 2008 and that Same Day first notified Penn-Star of the potential claim on February 26, 2009, there is no genuine dispute that Same Day failed to notify Penn-Star for approximately ten months after its duty was triggered. As set forth above, numerous courts interpreting the same "as soon as practicable" language used in the notice provision of Penn-Star's Policy have found significantly shorter delays to be untimely as a matter of law. E.g., Am. Home Assur. Co., 984 F.2d at 78 (finding 36 day delay to be an unreasonable amount of time).

Same Day contends that its late notice should be excused because it had a good faith belief in non-liability until it received Liberty Mutual's December 23 Letter, at which time it first became aware of the size of Liberty Mutual's worker's compensation lien. (Same Day Opp. Br. at 6-7.) The only new relevant information contained in the December 23 Letter was that Liberty Mutual's investigation had found Same Day "to be legally liable" for Ms. Sansone's injuries and that Liberty Mutual expected "full reimbursement of [its] lien in the amount of $178,749.80." (Decl. of Lance J. Kalik, Ex. H.) The December 23 Letter also noted that Liberty

Mutual had "previously notified [Same Day] of our lien interest." (Decl. of Lance J. Kalik, Ex. H.)

While a reasonable, good faith belief in non-liability may excuse some delay when the issue relates to the insured's notice of an occurrence, Otsego Mut., 86 N.Y.2d at 750, and normally the issue of good faith belief is a question of fact, id., Same Day's excuse is insufficient as a matter of law.  Comparing Liberty Mutual's December 23 Letter against its April 18 Letter, the Court observes that the contents of the two letters hardly differ.  Each letter put Same Day on roughly equal notice of the circumstances giving rise to a potential claim.  There is no reasonable basis upon which Same Day may claim that it received sufficient notice from the December 23 Letter but not from the April 18 Letter.  Same Day, moreover, fails to cite any authority for the proposition that a duty of notice is triggered only once the insured is informed of the size of the potential claim against it.  Because Same Day has offered no other justification for its delayed notice, it has failed to carry its burden of demonstrating that the delay was excusable under the circumstances.  As stated above, the information known to Same Day in April 2008 would have suggested to a reasonable person the possibility of a claim, and that is all that is required to trigger a duty of notice under New York law.  Sparacino, 50 F.3d at 143.

Further, the Court notes that even if Same Day's duty was not triggered until it received Liberty Mutual's December 23 Letter, Penn-Star would still be entitled to judgment as a matter law.  Even accepting Same Day's position, it failed to provide Penn-Star with notice of the potential claim until more than two months

after Liberty Mutual sent the December 23 Letter. Under New York law, that delay is sufficiently lengthy for this Court to conclude that Same Day's provision of notice was untimely as a matter of law. E.g., Am. Home Assur. Co., 984 F.2d at 78.

Same Day's only excuse for this two month delay is Scott Weinstein's statement that Liberty Mutual's December 23 Letter was received sometime during the winter holidays, and that Weinstein takes two weeks off every year during the first two weeks of January. (Decl. of Scott Weinstein ¶ 17.) Under the circumstances, that excuse is inadequate. In particular, the delay is inexcusable because Same Day does not dispute that it notified its excess insurer of Ms. Sansone's injuries on February 2, 2009, more than three weeks before it gave notice to Penn-Star. (Penn-Star's 56.1 ¶ 11.) Given that more than a year had already passed since Ms. Sansone's accident, Same Day's decision not to provide more expedited notice was made at its own risk. See Pfeffer v. Harleysville Grp., Inc., 502 F. App'x 28, 30 (2d Cir. 2012) (summary order) ("When the insured indefinitely reserves to itself the determination of whether a particular loss falls within the scope of coverage it does so at its own risk." (quoting Power Auth. v. Westinghouse Elec. Corp., 117 A.D.2d 336, 343 (1st Dep't 1986)).[3]

Because Same Day failed to comply with the Policy's timely notice provision, Penn-Star is entitled to judgment as a matter of law. Same Day is not entitled to a

---

[3] Same Day also suggests that its untimely notice should be excused because Penn-Star received a letter from Liberty Mutual at the same time that Same Day received the December 23 Letter. (Same Day's Opp. Br. at 2, 6.) The Court rejects that argument. New York law does not require an insurer to demonstrate prejudice to successfully invoke a late notice defense, see AXA Marine, 84 F.3d at 624-25; Briggs, 11 N.Y.3d at 382, nor is an insurer deemed to have received notice by learning of the occurrence from a third party, Argonaut Ins. Co., 2013 WL 4005109, at *10; Heydt Contracting, 146 A.D.2d at 499.

declaration that Penn-Star must afford it coverage in the action filed by Debra and Robert Sansone in the United States District Court for the District of New Jersey.

IV. CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is GRANTED.

The Clerk of Court is directed to close the motion at ECF No. 18, and to terminate this action.

SO ORDERED.

Dated:   New York, New York
         December 16, 2015

                                              _____
                                              KATHERINE B. FORREST
                                              United States District Judge